IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Line,                                   :
                    Petitioner                :
                                              :   No.  731 C.D. 2015
            v.                                :
                                              :   Submitted:  September 11, 2015
Unemployment Compensation                     :
Board of Review,                              :
                    Respondent                :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED:  November 25, 2015


            James Line (Claimant) petitions, *pro se*, for review of the April 1, 2015
order of the Unemployment Compensation Board of Review (Board) which affirmed
a referee's determination that Claimant was ineligible for benefits under section
402(b) of the Unemployment Compensation Law (Law).[1]

            Claimant was employed by Beacon Light Behavioral Health (Employer)
as a family-based mental health professional from July 5, 2008, until his last day of
work on September 29, 2014.   The local service center found that Claimant was
ineligible for benefits because he voluntarily quit his employment without informing

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(b).

Employer of his reason for leaving. Claimant appealed, asserting that he had necessitous and compelling reason to leave his employment. The matter was assigned to a referee, who held a hearing on November 24, 2014. Claimant, who by then had obtained new employment, participated by telephone, and Employer offered the testimony of three witnesses.

Claimant testified that he was required to submit a family-based enactment video that satisfied state requirements in order to maintain his position with Employer. Claimant said that his first video, submitted in February of 2014, failed to pass state regulations. (Notes of Testimony (N.T.) at 13.) Claimant stated that after his first video did not pass state requirements, he met with his supervisor, Aimee Kaple, and a state representative on May 21, 2014, to discuss necessary improvements that he could make in his videos. (N.T. at 17.) Claimant testified that he continued to submit videos to Kaple throughout the summer of 2014, but Kaple did not feel that they satisfied the state requirements and did not send any of those videos to the state. Claimant stated that he sought help in passing the regulatory requirements from both Kaple and another supervisor. (N.T. at 9.) According to Claimant, his requests for help were largely ignored, and Kaple's advice was vague and fruitless. (N.T. at 13.)

Claimant testified that after his requests for help and the videos he submitted were ignored, he sent an email to Kaple in August 2014 explaining that he had concerns about his employment. Claimant stated he was called into Kaple's office on August 28, 2014, and expected that he would meet with Kaple alone about his videos or work. Claimant said that, instead, he met with both Kaple and Nate Gressel, Employer's vice president of children's services, and he was given a written warning for failing to submit a passing video. Claimant testified that portions of the

2

warning were inaccurate, including the statement that he failed to seek help regarding the video. According to Claimant, he consistently sought help, and he even took the lead in creating the video when his partner was absent from work for sixteen days. Claimant testified that he asked Kaple and Gressel what would happen if he failed to complete a passing video, but they gave him only vague responses. Claimant said that their answers greatly concerned him; Claimant feared that he would never pass the video requirements, giving Kaple and Gressel reason to push him out of the company. (N.T. at 10.) Claimant stated that Kaple wanted Claimant out of the agency and, toward that end, she continuously failed to send his videos to the state. (N.T. at 17.)

Claimant also testified that he had applied for several different positions within the agency. He said that it became evident during the August 28th meeting with Kaple and Gressel that he would not be hired in any other position, and he believed that it was only a matter of time until he was discharged. According to Claimant, Gressel told him that Kaple had described him as, "not cut out for this type of work," which increased Claimant's concern that his employment was in jeopardy. (N.T. at 18-19.)

Claimant said that he feared that his employment would be terminated, although he admitted that neither Kaple nor Gressel told him he would be discharged during the August 28th meeting. Claimant stated that he did not want to risk discharge by failing another video, so he submitted his resignation the day after the August 28th meeting. Claimant noted that he complied with Employer's requirement to give thirty days' notice. (N.T. at 11-12.)

Claimant testified that while he continued working, he received a second written warning and a five-day suspension during a September 2, 2014 meeting with

3

Kaple because he failed to submit a passing video. Claimant stated that, during this meeting, Kaple told him that if he did not submit a passing video by October 3, 2014, he would be discharged. Claimant explained that he did not believe he could satisfy the video requirements and he left his employment as planned on September 29, 2014. (N.T. at 12.)

Kaple testified that during the May 21, 2014 meeting, Claimant was made aware that he had three months to resubmit a video and that, contrary to Claimant's testimony, she offered Claimant training in his weak areas. Kaple stated that shortly after they met in May, Claimant told her that he was no longer going to try to satisfy the state video criteria. Kaple said that she and Claimant subsequently looked into other fields of employment within Employer's facility and that she continued to offer Claimant support for his video. (Record Item Number 2 at 27; N.T. at 20.)

Kaple acknowledged that Claimant submitted numerous videos through the summer of 2014, but she said he did not make it known that he wanted a video submitted to the state until August 29, 2014. Kaple testified that she and another supervisor reviewed the video on August 29th and found that it did not demonstrate necessary skills. (N.T. at 20.)

Kaple stated that when she met with Claimant on September 2, 2014, she offered him training in Pittsburgh, which he attended. Kaple testified that following the training, Claimant submitted a video on September 25, 2014. Kaple said that she did not review that video because Claimant resigned on September 29, 2014. (N.T. at 20.)

Gressel testified that during the August 28th meeting, he voiced concern about Claimant's inability to submit a passing video. Gressel said that there was

discussion of Claimant's desire to be transferred within the company but that Claimant did not explicitly request a transfer during the meeting. Gressel testified that he did not hear anything else from Claimant regarding concern for his employment before or after Claimant resigned. (N.T. at 26-27.)

The referee accepted the testimony of Employer's witnesses as credible and rejected Claimant's testimony that he exhaustively attempted to maintain his employment. The referee's decision set forth the following relevant findings of fact:

> 2. Due to state regulations, the claimant was required to complete and submit a video of a family-based enactment that received a passing grade in accordance with regulations, in order to maintain his certification.
>
> 3. The claimant submitted a video sometime in the spring of 2014; however, that video did not pass regulations.
>
> 4. On May 21, 2014, the employer met with the claimant and advised him that his video had not passed the requirements, and gave the claimant three additional months to re-submit a video that passed the requirements.
>
> 5. The employer discussed with the claimant the areas of struggle he had with the video, and offered training and assistance to the claimant in order to complete the video requirement.
>
> 6. On June 30, 2014, the claimant notified his supervisor via email that he would not be attempting to satisfactorily complete the video, as he believed he was unable to do so.
>
> 7. In the June 30, 2014, email, the claimant notified his supervisor that he intended to continue working in his position and intended to seek employment elsewhere within the company.
>
> 8. On August 28, 2014, the claimant was given a written warning for failing to complete the video within the three-

5

month timeframe the employer had given the claimant in May 2014.

9. During the August 28, 2014, meeting, the employer gave the claimant until August 31, 2014, to properly complete the video, or else the claimant would receive a five-day suspension.

10. On August 29, 2014, the claimant submitted a letter of resignation to the employer, documenting that his last day of employment would be September 29, 2014.

11. The claimant also submitted a video on August 29, 2014, which did not pass regulations.

12. On September 2, 2014, the claimant was given a written warning and five-day suspension for failing to submit a passing video.

13. The claimant was suspended without pay effective Friday, September 5, through Thursday, September 11, 2014, due to failure to complete video.

14. In the September 2, 2014, written warning, the claimant was advised that he would be discharged from employment if he failed to submit a passing video by October 3, 2014.

15. The claimant voluntarily terminated the employment effective September 29, 2014, due to his belief that he was unable to pass the video requirement.

(Findings of Fact Nos. 2-15.)

The referee found that when Claimant submitted his letter of resignation on August 29, 2014, he only faced the possibility of a five-day suspension if he failed to submit a passing video. The referee also found that Claimant was never faced with imminent discharge, only the possibility of discharge if he failed to satisfy the video requirements. Additionally, the referee concluded that Claimant did not show that he

made an exhaustive effort to maintain his employment,[2] in that he did not establish that he was incapable of properly completing the video requirement but rather chose to voluntarily terminate his employment in lieu of continuing to work on the video. Consequently, the referee held that Claimant failed to meet his burden of demonstrating necessitous and compelling cause to quit his employment and was ineligible for benefits under section 402(b) of the Law. Claimant appealed to the Board, which affirmed the referee's decision and adopted and incorporated the referee's findings and conclusions.

On appeal to this Court,[3] Claimant argues that the Board erred in concluding that he failed to establish a necessitous and compelling reason to resign from his employment. Under section 402(b) of the Law, a claimant who voluntarily terminates his employment has the burden to demonstrate that he did so due to cause of a necessitous and compelling nature. *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008). Whether an employee has cause of a necessitous and compelling nature to quit employment is a legal conclusion subject to appellate review. *Brown v. Unemployment Compensation Board of Review*, 780 A.2d 885, 888 (Pa. Cmwlth. 2001). In order to show necessitous and compelling cause, the claimant must establish that: circumstances existed which produced real and substantial pressure to

---

[2] Although Claimant does not raise this issue, we note that in order for a claimant to show necessitous and compelling cause under section 402(b), the claimant must have made a reasonable effort, but not an exhaustive effort, to maintain his employment. *See, e.g.*, *Brown v. Unemployment Compensation Board of Review*, 780 A.2d 885, 888 (Pa. Cmwlth. 2001).

[3] Our scope of review is limited to determining whether Constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial evidence. *Doyle v. Unemployment Compensation Board of Review*, 58 A.3d 1288, 1291 n.2 (Pa. Cmwlth. 2013).

7

terminate the claimant's employment; like circumstances would compel a reasonable person to act in the same manner; the claimant acted with ordinary common sense; and the claimant made a reasonable effort to preserve his or her employment. *Id.*

Claimant argues that he had necessitous and compelling cause to leave his employment because he feared that his discharge was imminent. Where a claimant resigns in order to avoid an imminent discharge, the Board may properly treat the claimant's separation from employment as a discharge and analyze the claimant's eligibility for unemployment benefits under section 402(e) of the Law, 43 P.S. §802(e). *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 648 A.2d 124, 126 (Pa. Cmwlth. 1994). However, a claimant who resigns under circumstances indicating only a possibility of a discharge is considered to have voluntarily resigned. *Id.* Whether a claimant was discharged or voluntarily resigned is a question of law to be determined based on the facts found by the Board. *Key v. Unemployment Compensation Board of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996). The claimant bears the burden of proving that the separation was a discharge and not a voluntary resignation. *Id.*

In this case, the facts as found by the Board are similar to those before the Court in *Fishel v. Unemployment Compensation Board of Review,* 674 A.2d 770 (Pa. Cmwlth. 1996), and *Rizzitano v. Unemployment Compensation Board of Review*, 377 A.2d 1060 (Pa. Cmwlth. 1977). The claimant in *Rizzitano* worked as a repairman for a trucking company. For several weeks, the claimant's employer had been urging the claimant to increase productivity or face the possibility of being replaced. According to his testimony, the claimant did his best but was unable to meet his employer's demands. Shortly thereafter, the claimant voluntarily quit his employment because he believed that his inability to increase productivity would

8

result in his discharge. The Board held that the claimant was ineligible for benefits under section 402(b) of the Law, and this Court affirmed. We observed that the record clearly established that the claimant could have continued to work for the employer. We held that "[t]he fact that the claimant might have been discharged at some time in the future, near or distant, [did] not justify his terminating his employment when he did." *Rizzitano*, 377 A.2d at 1061.

We reached a similar result in *Fishel*. The claimant in *Fishel* was a substitute teacher who received an unsatisfactory performance evaluation. The claimant then met with the school principal to create objectives and goals for the claimant's career. A few months after this meeting, the claimant received a second unsatisfactory performance evaluation. Subsequently, the school administrator placed the claimant on leave without pay and advised her that he would recommend to the school board that she be dismissed. The claimant voluntarily resigned.

A referee determined that the claimant had resigned under real and substantial pressure and that she was not ineligible for benefits under section 402(b). However, the Board found that the claimant resigned prematurely because only the school board had authority to fire her and such action was not a foregone conclusion. Accordingly, the Board reversed the referee's decision, and this Court affirmed, holding that the administrator's action did not establish that the claimant faced imminent discharge. We concluded that the claimant resigned to avoid the possibility of termination by the school board and did not demonstrate necessitous and compelling cause for voluntarily terminating her employment.

We conclude that the facts as found by the Board in this case are similar to those in *Fishel* and *Rizzitano* and that application of those decisions compels the same result here. Claimant did not establish that he faced imminent discharge at the

9

time of his resignation, and, therefore, the Board properly decided this matter under section 402(b) of the Law.

Claimant argued that the August 28, 2014 meeting was Employer's "way of moving [him] out … and [he] wasn't going to . . . have a termination on [his] record. It was too much of a chance, so [he] submitted [his] resignation …." (N.T. at 10-11.) However, as the circumstances existed on August 28th, if Claimant failed to complete a satisfactory video by August 31st, he faced a possible disciplinary suspension, not a termination. Indeed, Claimant admitted that termination was not discussed during the August 28th meeting. (N.T. at 12.) Thus, at the time Claimant submitted his resignation, he was not facing imminent discharge, and the Board properly found that he voluntarily left his employment without necessitous and compelling reason. *Fishel*; *Rizzitano.*

Claimant also challenges the Board's determination that he failed to make a reasonable effort to preserve his employment prior to resigning. However, the Board rejected Claimant's testimony in this regard. Additionally, the record reflects that in June 2014, Claimant sent an email to Kaple stating that he would no longer work toward creating a passing video and instead would focus his efforts on finding a new position within the company. (N.T. at 18.) Although Claimant continued to produce videos throughout the summer, it was not until August 29th that he provided Kaple with a video for state submission; at this point, Claimant faced a suspension if he did not produce a passing video. (N.T. at 20.) Further, other than forwarding an email, Claimant did not contact Gressel regarding his employment concerns. (N.T. at 26.) Thus, the record contains substantial evidence to support the Board's findings that Claimant failed to exhaust all alternatives prior to quitting, as required to prove a necessitous and compelling cause for terminating employment

10

under section 402(b). *Porco v. Unemployment Compensation Board of Review*, 828 A.2d 426, 429 (Pa. Cmwlth. 2003).

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Line, :
                Petitioner :
   :   No.  731 C.D. 2015
            v. :
   :
Unemployment Compensation :
Board of Review, :
                Respondent :

## *ORDER*

AND NOW, this 25th day of November, 2015, the order of the Unemployment Compensation Board of Review, dated April 1, 2015, is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge